**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMANDA G.,[1]<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 2:25-cv-00674<br><br>District Judge Michael H. Watson<br>Magistrate Judge Caroline H. Gentry |

# REPORT AND RECOMMENDATION[2]

Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income are before this Court for the second time. Plaintiff appeals Defendant's finding that she was not under a "disability" as defined in the Social Security Act. Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, the undersigned Magistrate Judge **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendation within the specified time period.

## I. BACKGROUND

Plaintiff asserts that she has been under a disability since March 15, 2020. At that time, she was thirty-eight years old and was considered a "younger person" under the Social Security regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c).[3] Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-9 at PageID 1216-45), Plaintiff's Statement of Errors ("SE," Doc. No. 10), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 12), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 13). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

[3] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since March 15, 2020, the alleged onset date.

Step 2: She has the severe impairments of degenerative disc discase of the cervical and lumbar spine, radiculopathy, sciatica, stenosis, spondylosis, status post cervical spine surgery, status post lumbar spine surgery, neurogenic claudication with left foot drop, acquired deformity of the left lower extremity, cardiomyopathy with

implantable cardioverter-defibrillator (ICD) placement, carpal tunnel syndrome (CTS), and obesity.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to the following limitations: "[Plaintiff] could frequently finger, handle, and feel with the bilateral upper extremities. She could occasionally climb ramps and stairs, and she could occasionally balance, stoop, kneel, crouch, and crawl. She could never climb ladders, ropes, or scaffolds. She must avoid exposure to any workplace hazards, such as moving machinery or unprotected heights."

She is unable to perform any of her past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

(Decision, Doc. No. 7-9 at PageID 1222-36.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability. (*Id.* at PageID 1236-37.)

**B. Brandy Perkins, N.P.C.**

Cardiology nurse Brandy Perkins, N.P.C. treated Plaintiff at the OSU Heart and Vascular Center. (*See, e.g.,* AR, Doc. No. 7-8 at PageID 639.) Nurse Perkins completed a Physical Assessment questionnaire in June 2021. (*Id*. at PageID 892-93.) Nurse Perkins listed a diagnosis of hypertrophic cardiomyopathy with outflow track obstruction. (*Id.* at PageID 892.) She checked a box to indicate that Plaintiff's symptoms would "seldom" be "severe enough to interfere with the attention [and] concentration required to perform simple work-related tasks." (*Id.*) When asked to identify any side effects of medications

that may impact Plaintiff's capacity for work, Nurse Perkins wrote "dizziness [and] drowsiness." (*Id.*) When asked whether Plaintiff needed to "recline or lie down during a hypothetical 8-hour workday in excess of the typical 15-minute break in the morning, the 30-60 minute lunch, and the typical 15-minute break in the afternoon," Nurse Perkins checked a box to indicate "Yes." (*Id.*)

Nurse Perkins opined that Plaintiff could lift and carry up to ten pounds occasionally and less than ten pounds frequently. (AR, Doc. No. 7-8 at PageID 892.) She estimated that Plaintiff could walk for one block without rest or significant pain, sit for eight hours in an eight-hour workday, and stand or walk for one to two hours in an eight-hour workday. (*Id.*) Nurse Perkins indicated that Plaintiff would need to take unscheduled breaks during an eight-hour workday. (*Id.*) When asked how often Plaintiff would need to take breaks, Nurse Perkins wrote: "Unsure but it is very possible." (*Id.*) She further opined that each break would last ten minutes before Plaintiff returned to work. (*Id.*) Nurse Perkins indicated that Plaintiff did not have any limitations in the ability to perform repetitive reaching, handling, or fingering. (*Id.*) Nurse Perkins marked an "X" to indicate her opinion that Plaintiff would likely be absent from work once or twice per month. (*Id.* at PageID 893.) She also marked an "X" to indicate her opinion that Plaintiff's impairments were "reasonably consistent with the symptoms and functional limitations described" in the assessment form. (*Id.*)

The ALJ concluded that Nurse Perkins' opinions were "generally persuasive, including with regard to the lifting, carrying, sitting, standing, and walking limitations provided," but were "unpersuasive with regard to absenteeism, the lack of manipulative

limitations, and with regard to the need to recline or lie down during a work day (time off task)." (Decision, Doc. No. 7-9 at PageID 1232-33.) The ALJ then reasoned:

> In terms of supportability, the lifting, carrying, sitting, and standing/ walking limitations provided are consistent with sedentary work. Regarding breaks, Perkins, NPC stated she was unsure about this but said it was very possible, which is vague on its face. Perkins, NPC also stated [Plaintiff] has no limitation regarding the use of her hands, fingers, and arms, bilaterally, but the undersigned included some manipulative limitations, given the EMG/NCS findings and [Plaintiff's] CTS and [Plaintiff's] status post cervical spine surgery. Perkins, NPC opined that [Plaintiff] would be absent once or twice a month, but this is unsupported by [Plaintiff's] treatment notes, her reported activities of daily living, and her course of treatment, which do not support this level of absenteeism over a continuous, twelve-month period.

(*Id.* at PageID 1233.)

The ALJ further explained:

> In terms of consistency, evidence received at the hearing level reflects that [Plaintiff] underwent surgery on her lumbar spine, which is consistent with limiting her to sedentary work, but [her] gait has remained unassisted, and she has been able to help care for her son, drive, and perform her routine, daily tasks, which is consistent with her being able to maintain a reduced range of sedentary work on a regular and continuing basis. [Plaintiff's] longitudinal mental status exam findings reflect good mental status exam findings overall, despite her reports of pain.

(*Id.*) The ALJ concluded: "In sum, the assessments provided are generally persuasive overall, except with regard to the opinions previously set forth above, which are unpersuasive." (*Id.*)

## IV. LAW AND ANALYSIS

Plaintiff's sole assertion of error is that the ALJ erroneously evaluated the medical opinion of Nurse Perkins. (SE, Doc. No. 10 at PageID 1922.) For the reasons discussed

below, Plaintiff's assertion is not well-taken and the undersigned recommends that the ALJ's decision be affirmed.

**A. Applicable Legal Framework**

ALJs are required to analyze the persuasiveness of "all of the medical opinions" in the record. 20 C.F.R. § 404.1520c. A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) …." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be." 20 C.F.R. § 404.1520c(c)(1). Therefore, an

ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar. 20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ's consistency analysis therefore must compare the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v. Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

Because they are the most important factors, the ALJ must "explain *how* he or she considered" the supportability and consistency of all medical opinions in the record.[4] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (quoting 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio

[4] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

June 1, 2023) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*.

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (ALJs must "provide a coherent explanation of [their] reasoning ... in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (remanding case because "the ALJ's decision is internally inconsistent and incomplete").

**B. The ALJ Did Not Reversibly Err When Analyzing Nurse Perkins' Opinion.**

Plaintiff challenges the ALJ's evaluation of the supportability and consistency factors with regard to Nurse Perkins' opinion. (SE, Doc. No. 10 at PageID 2461-64.) Plaintiff argues:

> The ALJ accepted all of Perkins' opinions that were consistent with sedentary work. Tr 1201. The ALJ rejected the remaining opinions such as

> the need for additional breaks and absenteeism – the two limitations that would have left Ms. Gonzalez unable to work. The ALJ rejected these limitations because they were supposedly inconsistent with the record. Tr 1201. The ALJ claimed they were inconsistent with the activities of daily living. The ALJ claimed they were inconsistent with her course of treatment. But, the ALJ never provided any actual analysis. The ALJ never actually explained how the record was inconsistent with Perkins' opinions. The ALJ's conclusions should not be considered proper substitutes for an actual analysis of the opinion evidence.

(*Id.* at PageID 2462-63.) Plaintiff also cites evidence in the record that arguably supports the need for additional breaks and absenteeism. (*Id.* at PageID 2463-64.)

As described above, the ALJ found that several limitations identified by Nurse Perkins—including the lifting, carrying, sitting, standing, and walking limitations—were persuasive. (Decision, Doc. No. 7-9 at PageID 1232-33.) The ALJ also found that Nurse Perkins' opinions regarding absenteeism, manipulative limitations, and the need for additional breaks were unpersuasive. (*Id.*) For the reasons set forth below, the undersigned finds that the ALJ adequately addressed the supportability and consistency factors, and her conclusions are supported by substantial evidence.

The ALJ explained her consideration of Nurse Perkins' justifications for particular limitations. For example, the ALJ stated: "Regarding breaks, Perkins, NPC stated she was unsure about this but said it was very possible, which is vague on its face." (Decision, Doc. No. 7-9 at PageID 1233.) The ALJ also explained that the absenteeism limitation recommended by Nurse Perkins was "unsupported by [Plaintiff's] treatment notes, her reported activities of daily living, and her course of treatment, which do not support this level of absenteeism over a continuous, twelve-month period." (*Id.*)

Plaintiff argues that the ALJ's explanations were insufficient:

> The ALJ never claimed what activities were supposedly inconsistent with the limitation. The ALJ never identified what treatment notes were contrary to Perkins' opinion. In fact, the ALJ never once cited to a specific exhibit or treatment note in the entire exhibit to support such a conclusion. It is therefore impossible to follow along with the ALJ's reasoning or trace the path of the ALJ's reasoning.

(Reply, Doc. No. 13 at PageID 2479). However, the applicable regulation did not require the ALJ to include these details in her analysis of the supportability and consistency factors. 20 C.F.R. § 404.1520c. Instead, "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5854 (Jan. 18, 2017).

Moreover, the ALJ did provide a detailed summary of the medical records related to Plaintiff's physical impairments earlier in the decision. (Decision, Doc. No. 7-9 at PageID 1227-31.) The ALJ also summarized Plaintiff's treatment history when she explained her formulation of the RFC. (*Id.* at PageID 1231-32.) The Court may consider these summaries when it evaluates the ALJ's explanation of her consideration of the supportability and consistency factors. *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (ALJ did not err by explaining that a treating physician's opinion was "not consistent with the past treatment records" when analyzing the consistency factor, even though those records were listed earlier in the opinion and not listed a second time); *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66 (6th Cir. 2014) (finding that the ALJ made "sufficient factual findings elsewhere in his decision to support his conclusion at step three"); *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th

Cir. 2006) (relying on findings elsewhere in the decision to affirm the ALJ's step three analysis, and stating there is no need for the ALJ to "spell out every fact a second time").

The ALJ acknowledged that Plaintiff underwent ICD implantation after a 2017 cardiac MRI showed hypertrophic cardiomyopathy with an atypical phenotype of inferior wall hypertrophy. (Decision, Doc. No., 7-9 at PageID 1227.) The ALJ noted that Plaintiff's provider thereafter limited her to lifting fifty pounds, and she was able to engage in substantial gainful activity in 2018.[5] (*Id.* at PageID 1227-28.) The ALJ also summarized cardiology treatment notes dated after the alleged disability onset date, including progress notes from Nurse Perkins and other providers at OSU Heart and Vascular Center, as follows:

> Subsequent records reflect that [Plaintiff] has continued to report some baseline shortness of breath, but she has generally denied chest pain, palpitations, syncope, and pre-syncope (Exs. 1F/4, 5F/4, 29F). Her cardiology records demonstrate stable findings overall on her course of treatment, status post her prior ICD placement (Exs. 1F/4, 5F/4, 29F).

(*Id.* at PageID 1228.)

The ALJ acknowledged that Plaintiff underwent replacement of the ICD generator after a battery malfunction in November 2022. (Decision, Doc. No. 7-9 at PageID 1230.) The ALJ cited notes from several cardiology follow-up visits that showed Plaintiff's condition remained stable and she reported no significant difficulty with daily activities:

> Treatment notes mention that she had not recently had a syncopal episode (Ex. 23F/7). During a cardiology visit in August of 2023, she denied chest pain and increased shortness of breath (Ex. 29F/38). She also denied syncope or near syncope, and she denied dizziness, lightheadedness, and

[5] Plaintiff's earnings records indicate that she engaged in substantial gainful activity in 2018 ***and*** 2019. (*See, e.g.,* AR, Doc. No. 7-6 at PageID 520, 522, 527.)

> lower extremity edema (Ex. 29F/38). These records mention that she can do all activities of daily living without major limitations (Ex. 29F/38). On examination, she had a BMI of 39.48 (Ex. 29F/39). She had no focal deficits (Ex. 29F/39). These records also mention that her echocardiogram, performed in August of 2021, showed mild concentric left ventricular hypertrophy with a left ventricular ejection fraction of 55 to 60% (Ex. 29F/40). Her ICD was functioning normally, and no arrythmias were noted (Ex. 29F/40). Her hypertension was noted to be well controlled (Ex. 29F/40).
>
> During a follow-up cardiology visit on February 22, 2024, [Plaintiff] stated she had been doing well since her last visit (Ex. 30F/163). She denied doing any regular exercise, but she stated she does all her own housework, including mopping and vacuuming, and she stated she has stairs in her home that she goes up and down regularly (Ex. 30F/163). She continued to report having baseline shortness of breath with exertion, but she could do all activities of daily living without major limitations (Ex. 30F/163). An EKG, performed during that visit, showed sinus rhythm, similar to a previous EKG (Ex. 30F/166).

(*Id.*)

With respect to Plaintiff's cervical spine condition, the ALJ acknowledged that imaging in December 2020 showed a disc herniation, bulging, and impingement, and that Plaintiff underwent cervical spine surgery in March 2021. (Decision, Doc. No. 7-9 at PageID 1229.) The ALJ also acknowledged that Plaintiff complained of post-surgical pain and numbness but noted that her symptoms improved somewhat with physical therapy. (*Id.* at PageID 1229-30.)

As for Plaintiff's lumbar spine condition, the ALJ acknowledged that an EMG and nerve conduction study in October 2020 showed a bilateral L5 radiculopathy with possible nerve root involvement, and that imaging in December 2020 and March 2022 showed disc bulging, herniations, and impingement at several levels. (Decision, Doc. No. 7-9 at PageID 1228-30.) The ALJ noted that Plaintiff tried physical therapy, received a

lumbar epidural steroid injection, and eventually underwent lumbar spine surgery in September 2024. (*Id.* at PageID 1230-31.) The ALJ acknowledged that some physical examinations showed abnormal findings such as decreased strength in the left arm, decreased spinal range of motion, paraspinal muscle tenderness, positive straight leg raising, decreased reflexes, decreased sensation and decreased strength in the left leg, and a left foot drop. (*Id.* at PageID 1228-31.) The ALJ compared these records to other records that documented normal physical examination findings such as normal spinal range of motion, intact sensation, and normal strength in the extremities. (*Id.*) The ALJ acknowledged that Plaintiff occasionally walked with a slowed gait but noted that she could stand without difficulty and ambulate without assistance. (*Id.* at PageID 1228-31.)

With regard to Plaintiff's CTS, the ALJ cited an October 2020 EMG and nerve conduction study that showed median demyelinating neuropathy at the left wrist consistent with CTS. (Decision, Doc. No. 7-9 at PageID 1228.) The ALJ noted that "[c]onservative treatment in the form of a left wrist splint was advised" and that the recommended treatment for Plaintiff's CTS remained conservative. (*Id.*)

The ALJ concluded that the balance of the evidence did not support Plaintiff's allegations of disabling symptoms. (Decision, Doc. No. 7-9 at PageID 1227, 1231-32.) The ALJ nevertheless accounted for the evidence by limiting Plaintiff to sedentary work and including certain limitations in the RFC, which she explained as follows:

> In sum, to account for the combined effect of [Plaintiff's] impairments on her overall functioning, the undersigned limited [Plaintiff] to sedentary work, with the postural, manipulative, and environmental limitations in the above RFC. [Plaintiff's] gait has remained unassisted over a continuous, twelve-month period, but she has been noted to have a left foot drop, she

> has presented with decreased strength, on examination, and she has had surgery on both her cervical and lumbar spine. Thus, the undersigned reduced [Plaintiff] to performing a limited range of sedentary work, as set forth in the above RFC, to account for the combined effect of [Plaintiff's] impairments on her overall functioning.
>
> The manipulative limitations in the RFC account for [Plaintiff's] CTS. [Plaintiff's] course of treatment for CTS has remained conservative. Given her course of treatment, her reported activities, which include driving and performing her routine daily activities, and her examination findings, additional manipulative limitations are not supported in this case.
>
> The postural limitations give deference to [Plaintiff's] alleged pain, in light of her musculoskeletal and neurological disorders. They also account for the effect of [Plaintiff's] cardiovascular impairments on her overall functioning. Of note, while [Plaintiff] has reported having baseline shortness of breath with exertion, she reported she is able to use the stairs as necessary and complete her activities of daily living.
>
> Additionally, the undersigned included some environmental limitations, which account for the effect of [Plaintiff's] impairments on her overall functioning, and which include some precautionary measures, especially in light of [Plaintiff's] cardiovascular impairments and ICD placement. Records reflect no episodes of syncope or near syncope since the alleged onset date. [Plaintiff] has continued to report pain, but her exam findings and reported activities support that could sustain work within the above RFC on a regular and continuing basis.

(*Id.* at PageID 1231.)

The ALJ discounted the persuasiveness of the absenteeism limitation and breaks recommended by Nurse Perkins because, she reasoned, Plaintiff "has been able to help care for her son, drive, and perform her routine, daily tasks, which is consistent with her being able to maintain a reduced range of sedentary work on a regular and continuing basis." (Decision, Doc. No. 7-9 at PageID 1233.) The ALJ also explained that Plaintiff's "longitudinal mental status exam findings reflect good mental status exam findings

overall, despite her reports of pain." (*Id.*) These explanations are supported by medical records and other evidence summarized elsewhere in the decision and discussed above.

Plaintiff contends that significant evidence in the record supports Nurse Perkins' identified limitations for absenteeism and time off task. (*See* SE, Doc. No. 10 at PageID 2463-64; Reply, Doc. No. 13 at PageID 2478.) But as noted above, this Court cannot reweigh the evidence. Instead, it can only determine whether the ALJ's findings are supported by substantial evidence. Based upon the ALJ's explanations and the evidence cited in the decision, the undersigned answers that question in the affirmative.

For all of these reasons, the undersigned finds that the ALJ adequately addressed the supportability and consistency of Nurse Perkins' opinions as required by 20 C.F.R. § 1520c(b)(2), and her conclusions are supported by substantial evidence. The undersigned therefore recommends that the ALJ's decision be affirmed.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 10) be OVERRULED;
2. The Court AFFIRM the Commissioner's non-disability determination; and
3. The case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

## DEADLINE TO FILE OBJECTIONS

In accordance with Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may file and serve specific written objections to this Report and Recommendation ("R&R") **within fourteen (14) days** after being served with a copy. A party may respond to another party's objections **within fourteen (14) days** after being served with a copy. If necessary, the objecting party must promptly arrange for transcribing the record, or whatever portions of it to which the parties agree or the Magistrate Judge considers sufficient. If proper objections are timely filed, then the District Judge will conduct a de novo review of the challenged portion(s) of the R&R. Failure to file timely objections may forfeit rights on appeal. *See U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).